IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

DECEMBER 1999 SESSION

FILED

January 28, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,          )
                             )
          Appellee,          )          No. E1999-00919-CCA-R3-CD
                             )
                             )          Rhea County
v.                           )
                             )          Honorable Buddy D. Perry, Judge
                             )
RICKY LEE TURNER,            )          (Aggravated child abuse and child abuse)
                             )
                             )
          Appellant.         )


For the Appellant:                      For the Appellee:

Carol Ann Barron                        Paul G. Summers
264 Third Avenue                        Attorney General of Tennessee
Dayton, TN 37321                                and
                                        Mark E. Davidson
                                        Assistant Attorney General of Tennessee
                                        425 Fifth Avenue North
                                        Nashville, TN 37243

                                        James Michael Taylor
                                        District Attorney General
                                        265 Third Avenue, Suite 300
                                        Dayton, TN 37321


OPINION FILED:_____


AFFIRMED

Joseph M. Tipton
Judge


**O P I N I O N**


        The defendant, Ricky Lee Turner, appeals as of right from his convictions

following a jury trial in the Rhea County Circuit Court for aggravated child abuse, a

Class A felony, and child abuse, a Class D felony, of his daughters who were under six years of age. The defendant was sentenced to twenty years in the custody of the Department of Correction for the aggravated child abuse conviction and two years for the child abuse conviction, to be served concurrently. He raises the following issues:

> 1. whether the evidence is sufficient to support the aggravated child abuse conviction;
>
> 2. whether the trial court erred by allowing the defendant's statement to police to be admitted into evidence;
>
> 3. whether the trial court erred by allowing two expert witnesses to testify that the victims' injuries were the result of child abuse; and
>
> 4. whether the trial court erred by not sentencing the defendant as an especially mitigated offender and by applying an excessive sentence.

We affirm the judgments of conviction.

The defendant was convicted of the aggravated child abuse of his daughter, L.T., and the child abuse of his other daughter, S.T. At trial, Dr. Beth Ann Casady, a family practitioner, testified that the Department of Human Services requested that she examine the victims on January 22, 1998. She testified that L.T. had a burn on her arm that was about three and one-half inches long, with three blisters which were crusting over. She said that S.T. also had a burn on her arm that was about one and one-half centimeters by one-half centimeter. Dr. Casady stated that both burns were second degree. She testified that the victims' burns would have been extremely painful and that the pain would have lasted two to three days without medication. Dr. Casady testified that she had treated the children regularly and had noticed that the children appeared neglected but not abused.

Dr. Casady testified that she examined a list of medication the defendant was taking for Parkinson's Disease. She testified that a possible side effect of two of the medications is confusion. She testified that everyone reacts to medication differently and that the defendant had never seemed confused when she talked with him.

Dr. James Nelson, a pediatrician, testified that he reviewed the victims' records, including photographs of their injuries which were admitted into evidence. He

2

testified that the burns appeared to be second degree and would have been very painful.  He also testified that the defendant's medication could possibly cause someone to say something they normally would not.

Mike Owenby, an investigator with the Rhea County Sheriff's Office, testified that he was dispatched to the defendant's home on January 21, 1998, and that he interviewed the defendant.  He testified that he informed the defendant of his <u>Miranda</u> rights and that the defendant seemed lucid and appeared to understand.  He testified that he read a rights waiver to the defendant because the defendant said he could not read.  He said he asked the defendant several times if he understood, and the defendant said that he did.  Deputy Owenby testified that he spoke with the defendant for two hours and that the defendant did not appear to be hallucinating or having any difficulty thinking.  He stated that before the interview, he asked the defendant if he was taking any medication that would prevent him from being able to participate in the interview, and the defendant said he was taking medication for Parkinson's Disease.

Deputy Owenby testified that the defendant gave different versions of what happened to the victims.  He said that the defendant initially stated that the children were burned on a wood stove at their grandmother's house.  He said the defendant later told him that the children tripped and fell against the stove at his house.

Beverly Switter testified that she was a case manager for the Department of Children's Services and was present during the interview with the defendant and Officer Owenby.  She said the defendant did not appear to be under the influence of any intoxicant during the interview.  She said the defendant initially stated that L.T. burned her arm at her grandmother's house.  She said he later stated that the victims fell into a heater at home.  She testified that the defendant finally gave a statement in which he admitted holding the victims' arms against a kerosene heater.  She stated that because the defendant could not write well, she wrote the statement for the defendant, and the defendant signed it.  The statement was admitted into evidence and provides as follows:

3

Monday night (1-19-98) [S.T.] and [L.T.] were running through the kitchen. I was sitting at the kitchen table. I told them to stop running but they would not listen so I grabbed [S.T.'s] right arm and pushed it into the kerosene heater to show her how bad she could get burned if she fell into the heater. I accidentally held her hand on the heater too long. I did not mean for her to get burned that bad. [L.T.] was running behind [S.T.] A few minutes later [L.T.] was running back and forth in front of the heater. I grabbed [L.T.'s] right arm and held it on the kerosene heater to show her how bad the heater could hurt her so she wouldn't go around it anymore. I accidentally held her arm on the heater a minute or two too long. It was probably two minutes maximum. I did not mean to burn [L.T.] that bad. The girls would not have gotten burned if I had not done this. I did this to show them what the dangers are of the heaters. I did this just for discipline. I lost control. The kids were getting on my nerves. I have a nervous disorder.

Mary Miles, the defendant's mother, testified that the defendant's mind is not right and that he will say anything he is told to say. She testified that the defendant has become worse since he began taking medication. Ms. Miles stated that she had never seen the defendant spank his children. She admitted telling Ms. Switter that she showed all of her children the dangers of a kerosene heater, but she denied saying that she burned the defendant and that he still has a scar.

Ms. Switter was recalled and testified that a note in her file documented a conversation she had with Ms. Miles. She said the note reflected that Ms. Miles told her that "she did all her kids that way growing up" to show them what a heater could do and that the defendant still has a scar from where she burned him. Based upon the foregoing evidence, the jury convicted the defendant of aggravated child abuse and child abuse.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for aggravated child abuse. He argues that the state failed to establish the corpus delicti in that the only evidence of criminal agency is from the defendant's uncorroborated inculpatory statement. The state contends that the evidence is sufficient to support the conviction.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the

4

prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

The defendant argues that the state failed to establish the <u>corpus</u> <u>delicti</u> of the crime because the only evidence of criminal agency comes from the defendant's uncorroborated inculpatory statement. Literally, <u>corpus</u> <u>delicti</u> means "the body of the crime." <u>State v. Shepherd</u>, 862 S.W.2d 557, 564 (Tenn. Crim. App. 1992). The two elements necessary to prove the <u>corpus</u> <u>delicti</u> are (1) that a certain result has been produced, and (2) that some person is criminally responsible for the act. <u>See</u> <u>Wooten v. State</u>, 203 Tenn. 473, 481, 314 S.W.2d 1, 5 (Tenn. 1958). Our supreme court has held that:

> while the corpus delicti cannot be established by confessions alone, yet the confessions may be taken in connection with other evidence, direct or circumstantial, corroborating them, and, if from all of the evidence so considered together the corpus delicti and the guilt of the person with reference thereto is established beyond a reasonable doubt, it is the duty of the jury to convict.

<u>Ashby v. State</u>, 124 Tenn. 684, 697-98, 139 S.W. 872, 875 (Tenn. 1911).

This court has previously considered whether an inculpatory confession was sufficiently corroborated to establish the criminal agency component of the <u>corpus delicti</u>. <u>See</u> <u>State v. Ervin</u>, 731 S.W.2d 70, 72 (Tenn. Crim. App. 1986). In <u>Ervin</u>, the defendant was convicted of aggravated sexual battery and aggravated rape after twice confessing that he fondled and digitally penetrated the victim. A pelvic examination of the victim revealed injuries consistent with digital penetration. This court held that "the pelvic examination of the victim was sufficient circumstantial evidence to establish the <u>corpus</u> <u>delicti</u> and corroborate both confessions by the appellant." <u>Id.</u> Similarly, we hold that in the present case, the photographs of the victims' injuries sufficiently corroborated the defendant's confession such that criminal agency was established.

## II. ADMISSIBILITY OF DEFENDANT'S STATEMENT

5

The defendant contends that the trial court erred by allowing his statement into evidence. He contends that the evidence shows that he was under the influence of drugs when he made the statement, thus the statement is involuntary. The state contends that the statement was made knowingly and voluntarily, and the trial court properly admitted it.

A defendant may waive his constitutional right to silence as long as the waiver is made "voluntarily, knowingly, and intelligently." State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992). In determining whether a defendant has waived his Miranda rights, courts must look at the totality of the circumstances. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997). A trial court's findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

The defendant contends that his statement was involuntary because he was under the influence of the medication he was taking for Parkinson's Disease. He states that the following testimony from Dr. Nelson supports his argument that his statement was involuntary: "[The medication] can have a truth serum type effect that something - - that a - - someone might withhold. When they are inhibited once they are disinhibited they might bring out something that they wouldn't otherwise."

We hold that the evidence does not preponderate against the trial court's determination that the defendant's statement was voluntary. The audiotape of the statement shows that Officer Owenby read the defendant his Miranda rights, and the defendant stated that he understood them and signed the waiver form. Although he told the officer that he was taking medication for Parkinson's Disease, he never told the officer that it affected his ability to understand what was going on. Both Officer Owenby and Ms. Switter testified that the defendant did not seem confused or under the influence of any intoxicant. Furthermore, although Dr. Nelson testified that the defendant's medication could have a truth serum-type effect and that one might reveal information they normally would withhold, no evidence indicates that such occurred in this case. The trial court properly admitted the defendant's statement.

6

### III. ADMISSIBILITY OF OPINION TESTIMONY

The defendant contends that the trial court erred by allowing both doctors to testify that, in their medical opinion, the victims suffered from child abuse. He argues that this testimony is inadmissible because it relates to the ultimate issue to be decided by the jury and is confusing to the jury. The state contends that the evidence was properly admitted. It argues that an expert's opinion need not be excluded merely because it embraces an ultimate issue to be decided by the trier of fact as long as the opinion is helpful. It further argues that the trial court in the present case properly instructed the jury on the weight to be given to the testimony.

The testimony with which the defendant takes issue occurred when the prosecutor asked both doctors whether it would be child abuse for an adult male to hold a young child's arm against a kerosene heater, causing second degree burns. Both doctors stated that this would be child abuse. After Dr. Casady's opinion, the trial court instructed the jury as follows:

> I allowed the doctor to answer the question and give her opinion, but she's giving medical opinions. You'll be given a legal definition of aggravated child abuse and/or child abuse and the decision will be yours, the jury, to determine from all of the facts whether the facts in this case fit the legal definition. I'm allowing the doctor to give a medical opinion and I think maybe I need to clarify that for the record.

Following Dr. Nelson's opinion, the trial court provided the following cautionary instruction to the jury:

> Again, ladies and gentlemen, I want to caution you folks and make sure that we draw a distinction. What constitutes child abuse in medical terminology may not constitute child abuse when you hear the definitions that I'm going to give you in the charge, and I'm going to give you the law applicable to this case. You are the triers of facts. You're not bound by what an expert witness says and you must take all of the facts and make a decision in this case as to whether it fits the legal definition that you're going to be given.

The defendant contends that the opinion testimony was inadmissible because it was not helpful to the trier of fact and, when combined with the trial court's cautionary instruction, confused the jury.

Rule 704, Tenn. R. Evid., provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, opinion testimony is not

7

admissible on an ultimate issue if the jury could readily draw its own conclusions on the matter without the aid of the witness' opinion. See Neil P. Cohen et al., Tennessee Law of Evidence, § 704.2 (3d ed. 1995); Blackburn v. Murphy, 737 S.W.2d 529, 533 (Tenn. 1987). In addition, expert opinion testimony must "substantially assist the trier of fact to understand the evidence or determine a fact in issue . . . ." Tenn. R. Evid. 702.

In the present case, we believe that the trial court erred by allowing the testimony. The jury did not need the doctors' opinions in this regard to determine whether the defendant committed the crimes with which he was charged, nor did the testimony substantially assist the jury in any way. We also note that to the extent that the doctors' opinions ostensibly related to a "medical" as opposed to a "legal" definition of child abuse, the opinions were irrelevant to the case and potentially confusing to the jury. Nevertheless, we view the error to be harmless. See T.R.A.P. 36(b). The trial court provided cautionary statements to the jury immediately after each doctor gave the opinion, and the state presented a strong case against the defendant. Under these circumstances, we cannot say that the error more probably than not affected the judgment.

## IV. SENTENCING

The defendant contends that the trial court erred in sentencing him by (1) not granting him especially mitigated offender status and (2) sentencing him to twenty years in confinement. Essentially, the defendant argues that the trial court improperly balanced mitigating and enhancement factors. The state contends that the trial court properly sentenced the defendant.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to

8

the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

The sentence to be imposed by the trial court for a Class A felony is presumptively the midpoint in the range when there are no enhancement or mitigating factors present. For a Class D felony, the sentence is presumptively the minimum in the range when there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings

9

are adequately supported by the record.  Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

At the sentencing hearing, a presentence report was admitted into evidence.  The report reflects that the then forty-year-old defendant has a 1997 conviction for disorderly conduct.  It also reflects that the defendant is taking prescription medicine for arthritis, depression, and Parkinson's Disease.

The trial court denied the defendant's request to be sentenced as an especially mitigated offender and sentenced the defendant twenty years in jail for the aggravated child abuse conviction, the presumptive midpoint, and to two years for the child abuse conviction, the presumptive minimum.  The trial court found, as an enhancement factor, that the defendant abused a position of public or private trust. See Tenn. Code Ann. § 40-35-114(15).  The trial court found the following mitigating factors applicable, as listed in Tenn. Code Ann. § 40-35-113:

> (1) The defendant's conduct neither caused nor threatened serious bodily injury;
>
> (3) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
>
> (5) Before detection, the defendant compensated or made a good faith attempt to compensate the victim of criminal conduct for the damage or injury the victim sustained;
>
> (8) The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense . . . .; [and]
>
> (11) The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct[.]

The trial court gave significant weight to the enhancement factor, stating that "[t]here's probably no more sacred trust that exist[s] than the bond and the trust between a father and a child . . . ."

## A.  ESPECIALLY MITIGATED OFFENDER

First, the defendant contends that the trial court erred by not sentencing him as an especially mitigated offender.  Pursuant to Tenn. Code Ann. § 40-35-109, the trial court may find a defendant to be an especially mitigated offender if (1) the

defendant has no prior felony convictions and (2) the court finds mitigating, but no enhancement, factors. The question of whether a defendant should be sentenced as an especially mitigated offender rests within the sound discretion of the trial court. See State v. Braden, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993). In the present case, the trial court found an appropriate enhancement factor. Thus, the defendant was not eligible for sentencing as an especially mitigated offender.

## B. LENGTH OF SENTENCE

The defendant contends that the trial court imposed an excessive sentence, arguing that twenty years of confinement is excessive in relation to the acts he committed. The defendant argues that the trial court improperly balanced the mitigating factors with the enhancement factor. Initially, we note that the trial court liberally applied the defendant's mitigating factors. We believe the trial court erred by applying factor (1), that the defendant's conduct neither caused nor threatened serious bodily injury. In any event, the trial court sentenced the defendant to the presumptive sentences for both the aggravated child abuse and child abuse convictions. The record supports the sentences imposed.

In consideration of the foregoing and the record as a whole, we affirm the judgments of conviction.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David H. Welles, Judge

_____
Jerry L. Smith, Judge