# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 2000 Session

## STATE OF TENNESSEE v. CORNELIUS MICHAEL HYDE

**Appeal from the Circuit Court for Blount County**
**No. C-10230,    D. Kelly Thomas, Jr., Judge**

---

**No. E2000-00042-CCA-R3-CD**
**December 28, 2000**

---

The Defendant appeals as of right from his conviction of aggravated child abuse. After being found guilty of aggravated child abuse by a jury, the Defendant was sentenced to twenty-one years. On appeal, he raises the following eight issues: (1) whether the evidence was sufficient to sustain his conviction; (2) whether the trial court erred by not requiring the State to respond to his Motion for a Bill of Particulars; (3) whether the trial court erred by admitting photographs of the victim's injuries and by allowing the photographs to be projected to the jury throughout the trial; (4) whether the trial court erred by not allowing the Defendant to cross-examine the State's expert concerning examples of serious bodily injury; (5) whether the trial court erred by not including the statutory definition of "injury" in the child abuse instruction, but including it in the aggravated child abuse instruction; (6) whether the trial court erred by not charging the jury with the lesser included offenses of assault and aggravated assault; (7) whether the trial court erred by not properly redacting the victim's medical report so as to eliminate a reference to the Defendant as the "chief suspect" in the case; and (8) whether the trial court erred by not redacting the Defendant's statement to eliminate the detective's use of the word "extremely" and by permitting unintelligible portions of the statement to be heard by the jury. We hold that the trial court erred by failing to instruct the jury on the lesser included offenses of aggravated assault and assault, but that such error was harmless. We find no other error; accordingly, we affirm the judgment of the trial court

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court. ROBERT W. WEDEMEYER, J., filed a concurring opinion. JOSEPH M. TIPTON, J., filed an opinion concurring in part and dissenting in part.

Eugene B. Dixon, Maryville, Tennessee, for the appellant, Cornelius Michael Hyde.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; Mike Flynn, District Attorney General; Kirk Andrews and Edward P. Bailey, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The proof at trial established that the Defendant was stopped for a traffic violation on February 1, 1997 by Deputy Sheriff Jay Colvin of the Blount County Sheriff's Department. Deputy Colvin observed a small child sitting in the passenger seat with only a seat belt restraining him, rather than a proper child restraint device. Upon further observation, Deputy Colvin noticed bruising on the child, later identified as three-year old Jacob Randall Duke, who was the son of the Defendant's girlfriend, Angela Gates. Deputy Colvin testified that the child had a "blood blister" on his bottom lip, and he had bruises all over his face and around his arms. Both the child and the Defendant were taken to the Blount County Sheriff's Department, where photographs were taken of the child, and the Defendant was interviewed.

Dr. Al Romans, an emergency department physician at Blount Memorial Hospital, testified that he examined the victim, Jacob Duke, on the evening of February 1, 1997. Dr. Romans said that the child was walking, that he was active and playful, and that he interacted well with the hospital staff. Jacob had no broken bones, and all of his extremities had full range of motion. However, Dr. Romans testified that the child had contusions, or bruises, all over his body. He observed contusions and hematomas in varying degrees of healing on Jacob's forehead, cheeks, back, anterior chest, lower abdomen, and thighs. He also observed irritation and swelling of the child's genital area. In his report, Dr. Romans said, "There is not one quadrant of this patient's body that does not have a mark or contusion secondary to, my opinion, abuse."

Dr. Romans testified that in his opinion, the injuries to Jacob were not accidental. He said that they were the result of blunt trauma, and he agreed that a belt could have caused many of the injuries. Dr. Romans could not testify with certainty as to the period of time over which the injuries occurred, but he did determine that not all of the injuries occurred at once. He explained that injuries such as Jacob's take ten to twenty-one days to heal, and he said that his examination took place about seven days "post-injury." He also said that the infliction of the injuries would have caused the child "severe pain;" however, Dr. Romans said that Jacob was not in pain during the examination. Dr. Romans did not prescribe any pain medication, and he recommended only soap and water for the genital irritation. He did, however, offer the following opinion: "The pain that this child incurred at the time of the beating, I think, was severe, extreme. Let me just go on to say that I have worked in the Emergency Department for 18 years. I have never seen a child beaten to this extent in 18 years of practice."

On cross-examination, Dr. Romans testified that pain is relative and that it is hard to determine how much pain a patient is having. When questioned about the severity of Jacob's injuries, Dr. Romans testified that the child had "superficial injuries," meaning that the injuries were "on the surface" of the child's body. He explained,

When I say superficial, it's the fact that I can look at this child and see these injuries. I don't have to do any diagnostic testing or radiographic x-ray reports or any surgeries to look on the inside of this child to see the injuries. These injuries were all manifestations that were present on the skin that you could see with just a cursory

examination of this child. But if I misquoted or mis-termed or misstated superficial with the implication being that these were not significant injuries, I'm sorry and I apologize to the Court. These were, in my opinion, significant injuries.

Dr. Romans did testify that the injuries inflicted upon Jacob would not have any long-term physical effect.

Dr. Romans was cross-examined at length about his prior preliminary hearing testimony, in which he had said that the cause of the irritation and inflammation of the child's genital area was "uncertain." During direct examination, Dr. Romans testified that this irritation was caused by blunt trauma. When asked to explain the differences in his testimony, Dr. Romans testified that he was not certain that he had changed his testimony. He said that after his initial examination he educated himself further about child abuse, and while he did not know the precise cause of the injuries to the child's groin area, he was of the opinion that the injuries were not "a natural phenomenon."

Detective Scott Carpenter testified that he interviewed the Defendant on February 1, and the Defendant agreed to talk to him after being informed of his rights. He said that the Defendant told him that he lived with Angela Gates and her son, Jacob. At first, the Defendant denied all knowledge of the child's injuries except for those on the child's face, and he told Detective Carpenter that Ms. Gates had said the child fell off the dresser and bumped his head. He said that he never bathed the child or changed the child's diaper or clothes and that he did not know about the other bruises. He told Detective Carpenter that caring for the child was mainly the responsibility of Angela Gates. He also said that they did not use babysitters and that the child was almost always in the company of either him or Ms. Gates. After being shown photographs of Jacob's bruises, the Defendant started sobbing and then he said that he had injured the child. Detective Carpenter took a recorded statement from the Defendant, which was played for the jury. In that statement, the Defendant admitted "whipping" the child with a belt. The Defendant told the police where to find his residence and where to find the belt, which the police recovered. Detective Carpenter said that the Defendant was cooperative. He also said that this case was "worse than anything I've seen in my career."

The Defendant's father, Cornelius Marion Hyde, testified that the Defendant worked for him as a mechanic, working from 7:00 a.m. until 7:00 to 10:00 p.m. Monday through Saturday. On occasion, Ms. Gates would bring Jacob to the business. Mr. Hyde testified that Jacob never appeared to be afraid of the Defendant, and Jacob would want to go places with the Defendant.

Corena Lynn Russell, the Defendant's sister, testified that she would sometimes visit Ms. Gates and Jacob during the day when the Defendant was at work. She said that during one visit a few weeks before the Defendant was arrested, she entered the home and saw Jacob crying with Ms. Gates standing over him. Ms. Russell observed a "pump-knot" bruise on Jacob's head. She said that Ms. Gates told her Jacob jumped off the sink and hit his head. Ms. Russell said that she had observed bruises on Jacob before, and Ms. Gates had told her that Jacob had received a "whipping." Ms. Russell also testified that once while she was shopping with Jacob and Ms. Gates, Jacob "got

smart" with Ms. Gates, and Ms. Gates "popped [Jacob] in the mouth" hard enough to make his mouth bleed. Ms. Russell said that Ms. Gates would sometimes "smack" Jacob in the back of the head or "swat him." When all of this occurred, the Defendant was not present.

The Defendant testified at trial on his own behalf, and he admitted that he had spanked Jacob with a belt on multiple occasions. He admitted that the last time he spanked Jacob, it was "excessive." He said he spanked the child for calling his mother a name. He denied ever hitting Jacob in the head, face, groin, or arms. He said that Ms. Gates had told him Jacob injured his head by falling off the dresser. He testified that Jacob was a very active child and that he could have fallen off the dresser. He said that he never saw the child naked because it was Ms. Gates' responsibility to bathe the child and change his clothes. He admitted crying when he saw the pictures of Jacob's bruises, and he said, "I didn't know that I had put them welts and stuff on him." On cross-examination, the Defendant admitted that he could have made some of the bruises that were on the child, but he denied making all of the bruises. He did not know how Jacob got all of the bruises. He said he only hit Jacob two or three times when he spanked him.

Finally, the defense presented its own expert witness, Dr. Larry Wolfe, a physician with a rural health clinic. He testified that he had reviewed Jacob's medical records and the pictures taken of the child. Dr. Wolfe testified that the child's injuries consisted of contusions and hematomas. These were superficial injuries. He said that the medical records showed no evidence that the child suffered extreme physical pain. He offered the opinion that "[e]xtreme physical pain is pain to a degree such that it significantly interferes with the activities of daily living, a person's normal activities, and usually requires fairly stout, strong painkillers."

Dr. Wolfe testified that some of Jacob's bruises were "fresh," meaning that they were three or four days old. He said that if the child was in extreme physical pain when those bruises were inflicted, "then two days later you would expect him to still have significant pain." Dr. Wolfe testified that he believed the irritation of Jacob's genital area was caused by the child's own scratching. He did not see evidence of blunt trauma to the child's groin.

## SUFFICIENCY OF THE EVIDENCE

The Defendant first challenges the sufficiency of the convicting evidence. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476

(Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

The Defendant was convicted of the crime of aggravated child abuse. To convict him of this crime, the State was required to prove that the Defendant knowingly, other than by accidental means, treated a child in such a manner as to inflict injury and that the Defendant's acts resulted in serious bodily injury to the child. See Tenn. Code Ann. §§ 39-15-401(a), 39-15-402(a). Because the child, Jacob, was under six years of age, the offense of aggravated child abuse constituted a Class A felony rather than a Class B felony. See id. § 39-15-402(b). On appeal, the Defendant asserts that the evidence was insufficient to establish that Jacob suffered serious bodily injury.

"Serious bodily injury" is defined by statute as "bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Id. § 39-11-106(a)(34). "Bodily injury" is defined as "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Id. § 39-11-106(a)(2).

In support of his argument, the Defendant relies upon the case of State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995), in which the adult victim was struck once in the face with a gun during a robbery. Id. at 47-48. She suffered a broken nose and a bruised cheekbone from the blow to her face, as well as two black eyes and a laceration across the bridge of her nose. Id. at 48. She testified that she "experienced extreme physical pain over her whole face, but especially to her nose." Id. This Court, in determining whether the victim's injuries constituted "serious bodily injury," applied the doctrine of ejusdem generis to the statute defining "serious bodily injury," stating,

> According to the Sixth Edition of Black's Law Dictionary, ejusdem generis means when words follow an enumeration of classes of things the words should be construed to apply to things of the same general class as those enumerated. Therefore, the enumerated portions of the definition of serious bodily injury should be read as coming from the same class of injuries. We do not believe that the pain commonly associated with a broken nose is extreme enough to be in the same class

as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty.

Id. at 49.

Relying on Sims, the Defendant asserts that the pain associated with Jacob's injuries was not in the same class as the other types of injuries enumerated in the statute; therefore, the proof did not establish that Jacob suffered serious bodily injury due to extreme physical pain. We disagree. While the evidence of serious bodily injury was not overwhelming, we conclude that this case is distinguishable from Sims and that the evidence was sufficient to establish that Jacob suffered extreme physical pain, which constitutes serious bodily injury. See Tenn. Code Ann. § 39-11-106(a)(34). Unlike the adult victim in Sims who suffered a single blow to the face, this victim was a three-year-old child who suffered multiple blows to most of his body. The jury heard evidence that Jacob suffered contusions and hematomas over every quadrant of his body. He also suffered irritation and inflammation of his genital area. The jury viewed photographs of these injuries. Dr. Romans testified that the injuries were caused by blunt trauma, including the genital injuries. Although Jacob was not in pain when he was examined, Dr. Romans testified that the child would have suffered severe pain at the time the injuries were inflicted. The Defendant admitted hitting Jacob with a belt and causing at least some of his injuries. The Defendant also admitted that his actions were "extreme" the last time he spanked Jacob. We have previously upheld aggravated child abuse convictions based upon extreme physical pain when the child's injuries consisted of extensive bruises and abrasions. See State v. Betty Levandowski, No. 03C01-9503-CR-000076, 1996 WL 315807, at * 5 (Tenn. Crim. App., Knoxville, June 5, 1996), aff'd on other grounds, 955 S.W.2d 603 (Tenn. 1997); State v. Tina Presley Pipes, No. 02C01-9410-CC-00222, 1995 WL 146125, at * 3 (Tenn. Crim. App., Jackson, April 5, 1995) (finding serious bodily injury where child had extensive bruises and was dehydrated). Likewise, we find here that a rational jury could have found beyond a reasonable doubt that the Defendant caused injuries which resulted in Jacob experiencing extreme physical pain. Therefore, the evidence is sufficient to support the verdict.

The Defendant also asserts that the evidence was insufficient because circumstantial evidence placed Jacob in the care of both Ms. Gates and the Defendant, and the Defendant denied causing all of Jacob's injuries. However, the Defendant did admit causing some of the injuries. The Defendant's admissions that he struck the child with a belt and caused some of the bruises on the child's body is sufficient for a rational jury to conclude that the Defendant knowingly injured Jacob, causing him extreme physical pain. The fact that there was testimony that another person may have also injured the child does not prevent the jury from concluding that the Defendant caused Jacob serious bodily injury. See State v. Hodges, 7 S.W.3d 609, 621 (Tenn. Crim. App. 1998).

BILL OF PARTICULARS

The Defendant next asserts that the trial court erred by not requiring the State to respond to his motion for a bill of particulars. He argues that his defense was hampered by the State's lack of

a response because without specific dates and times of the child's injuries, he could not prove an alibi. This issue is waived because the Defendant failed to make appropriate references to the record. Tenn. Ct. Crim. App. R. 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988); see also Tenn. R. App. P. 27(a)(7), (g). Moreover, our review of the record concerning a motion for a bill of particulars revealed only an order entered by the trial court which stated, "After hearing testimony from witnesses and argument from counsel for both parties, the State at the Court's instruction stated on the record that scientific proof and physical evidence establishes [sic] injuries of two to three weeks old. Evidence of other injuries would consist of testimony for live witnesses." Thus, it appears that the State did at least respond in some manner to the Defendant's motion. In addition, a conviction will not be overturned for failure to respond to a motion for a bill of particulars unless it appears that a defendant's defense was hampered by the lack of specificity. See State v. Byrd, 820 S.W.2d 739, 742 (Tenn. 1991). The Defendant here has shown no prejudice. Not only did the Defendant admit injuring the child, but he had the benefit of preliminary hearing testimony and medical records prior to trial. He was able to furnish these items to his own expert witness, who testified in his favor. This issue has no merit.

## ADMISSION OF PHOTOGRAPHS

The Defendant argues that the trial court erred by admitting photographs of the victim's injuries and by allowing those photographs to be projected to the jury during the trial. He asserts that the photographs were cumulative because the State's expert had testified as to the victim's injuries; that two of the photographs were duplicative; and that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice.

The admissibility of photographs is within the sound discretion of the trial court and will not be reversed on appeal absent a clear showing of abuse of that discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978); see also State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994); State v. Zirkle, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995). Like all evidence, photographs are generally admissible if they are relevant to a fact in issue. See Tenn. R. Evid. 402. Photographs may be relevant to show the location of wounds. State v. Goad, 707 S.W.2d 846, 850 (Tenn. 1986). They may also be admissible as evidence of the brutality of the attack and the extent of the force used against the victim. State v. Brown, 836 S.W.2d 530, 551 (Tenn. 1992). Photographs may be introduced to illustrate testimony, Stephenson, 878 S.W.2d at 542, and they are not rendered inadmissible because the subject portrayed could be described in words or because the photographs are cumulative. See State v. Terrence L. Davis, No. 02C01-9511-CR00343, 1997 WL 287646, at *7 (Tenn. Crim. App., Jackson, June 2, 1997); Collins v. State, 506 S.W.2d 179, 185 (Tenn. Crim. App. 1973). Notwithstanding, even relevant photographs may be excluded if their probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Tenn. R. Evid. 403; Banks, 564 S.W.2d at 951.

Because the Defendant was charged with aggravated child abuse, a pivotal issue in this case was whether the child suffered serious bodily injury. The photographs were highly relevant to this issue because they showed the location and the extent of the victim's injuries. The photographs were

used to illustrate the testimony of the witnesses, who were testifying about particular injuries to the child. Although witnesses testified about the extent of the victim's injuries, we believe that the photographs greatly assisted the jury in understanding the extent of those injuries. When being used during testimony, the photographs were projected on a television screen for the jury's view. While the photographs were no doubt disturbing in that they showed extensive bruising to a small child, we cannot say that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice. We thus hold that the trial court did not err by admitting the photographs of the victim's injuries.

In addition, we note that the record reveals an objection to the admission of only three of the fourteen photographs, and the record does not reveal an objection to the projection of any of the photographs during trial. Failure to make a contemporaneous objection waives consideration by this Court of the issue on appeal. See Tenn. R. App. P. 36(a); Killebrew, 760 S.W.2d at 235.

## CROSS-EXAMINATION OF STATE'S EXPERT

The Defendant next asserts that the trial court erred by not allowing him to cross-examine the State's expert witness as to examples of what constitutes serious bodily injury. The State's expert, Dr. Romans, testified that Jacob's injuries would have caused him extreme physical pain. The Defendant's expert, Dr. Wolfe, testified that Jacob's injuries would not have caused him extreme physical pain. During cross-examination, the Defendant's attorney began to ask Dr. Romans about whether he considered certain injuries to be examples of serious bodily injury, at which point the State objected. The trial court sustained the objections, stating, "You need to ask him things about [what] the statute says is serious bodily injury. His definition of serious bodily injury doesn't really have any relevance. It's what he thinks about the absence or presence of what our statute says serious bodily injury is that matters." The Defendant now argues that he should have been allowed to ask both experts about their opinions of what types of injuries would constitute serious bodily injury under both the medical and legal definitions.

The admissibility of evidence is a matter within the sound discretion of the trial court, and this Court will not disturb the trial court's ruling absent a clear showing of an abuse of that discretion. See State v. Cauthern, 967 S.W.2d 726, 743 (Tenn. 1998); Banks, 564 S.W.2d at 949. We do not believe that the trial court abused its discretion in ruling inadmissible the experts' opinions of what injuries were serious under a medical definition because the opinions were irrelevant. See Tenn. R. Evid. 402. The jury was required to determine whether Jacob suffered serious bodily injury based on the statutory definition of serious bodily injury as enacted by the legislature, not based on a definition employed by medical science. Testimony about a medical definition of serious bodily injury could serve to confuse the jury. See State v. Ricky Lee Turner, No. E1999-00919-CCA-R3-CD, 2000 WL 92339, at *5 (Tenn. Crim. App., Knoxville, Jan. 28, 2000). We conclude that the trial judge acted within his discretionary authority by limiting the testimony in this manner.

## JURY INSTRUCTIONS ON "INJURY"

The Defendant argues that the trial court erred by not including the statutory definition of "injury" in the child abuse instruction but including it in the aggravated child abuse instruction. After instructing the jury on the elements of aggravated child abuse, the trial court instructed the jury on the definitions of both "injury" and "serious bodily injury." When instructing the jury on the lesser included offense of child abuse, the trial court set forth the elements of the offense of child abuse, which only requires proof of injury, rather than proof of serious bodily injury. See Tenn. Code Ann. § 39-15-401(a). The trial court then instructed the jury that "injury" had already been defined in the court's instructions. The Defendant asserts that by including the definition of "injury" in the aggravated child abuse instruction but not including it in the child abuse instruction, the trial court misled the jury as to the extent of injury required to convict for aggravated child abuse. We disagree.

In determining whether jury instructions are erroneous, this Court must read the entire charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. See State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998); State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). The trial court in this case correctly instructed the jury that aggravated child abuse requires proof of serious bodily injury. It also correctly instructed the jury that child abuse requires proof of bodily injury. We do not believe the jury could have been misled by the trial court informing it of the definitions of both "injury" and "serious bodily injury" after setting forth the elements of aggravated child abuse and then referring back to its prior instruction on definitions after setting forth the elements of child abuse. Instead of misleading the jury as to the extent of injury required to convict the Defendant of aggravated child abuse, we believe that the definitions assisted the jury in determining the extent of injury necessary to convict because they helped distinguish "injury" from "serious bodily injury." We find no error.

## LESSER INCLUDED OFFENSES

In his next issue, the Defendant argues that the trial court erred by failing to instruct the jury on aggravated assault and assault as lesser included offenses of aggravated child abuse.[1] A trial court is under the mandatory duty to instruct the jury on a lesser included offense, even if such an instruction is not requested, when "any evidence exists that reasonable minds could accept as to the lesser-included offense" and when that evidence is "legally sufficient to support a conviction for the lesser-included offense." State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999); see also Tenn. Code Ann. § 40-18-110(a). In Burns, our supreme court adopted a new three-part test for determining whether an offense is a lesser included offense. See Burns, 6 S.W.3d at 466-67. Under the new test, which was largely derived from the Model Penal Code, an offense is a lesser included offense if:

---

[1]We note that the child abuse statute explicitly states that a "violation of this section may be a lesser included offense of any kind of . . . statutory assault . . . if the victim is a child and the evidence supports a charge under this section." Tenn. Code Ann. § 39-15-401(d). There is no such provision in the aggravated child abuse statute. Thus, the legislature has not statutorily designated aggravated child abuse a lesser included offense of any statutory assault. See State v. Ducker, 27 S.W.3d, 889, 893 n. 1 (Tenn. 2000).

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id.

The Defendant was charged with aggravated child abuse for knowingly, other than by accidental means, treating a child under eighteen years of age in such a manner as to inflict injury, with such act resulting in serious bodily injury. Thus, the elements of aggravated child abuse as relevant to this case are (1) a knowing mental state, (2) an act which causes injury to a child under eighteen, and (3) serious bodily injury to the child. See Tenn. Code Ann. §§ 39-15-401(a), 39-15-402(a). When the child is under six years of age, the offense of aggravated child abuse is a Class A felony; when the child is between the ages of seven and eighteen, the offense is a Class B felony. See id. § 39-15-402(b). The offense of aggravated assault as relevant to this case is divided into two categories. Aggravated assault occurs when a person intentionally or knowingly causes serious bodily injury to another, and it also occurs when a person recklessly causes serious bodily injury to another.[2] See id. § 39-13-102(a). If the act is intentional or knowing, the offense is a Class C felony; if the act is reckless, the offense is a Class D felony. See id. § 39-13-102(d).

Applying the Burns test, we conclude that aggravated assault which is intentional or knowing is a lesser included offense under part (a) of that test, and aggravated assault which is reckless is a lesser included offense under part (b) of that test. Part (a) provides that an offense is a lesser included offense if "all of its statutory elements are included within the statutory elements of the offense charged." Burns, 6 S.W.3d at 466. For intentional or knowing aggravated assault, the

_____

[2]The Defendant asserts that the jury should have been instructed on another provision of aggravated assault, which provides: "A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402." Tenn. Code Ann. § 39-13-102(b). This provision of aggravated assault is clearly not a lesser included offense of aggravated child abuse under Burns. It contains multiple statutory elements that are not included within the elements of aggravated child abuse, the additional elements do not establish a less culpable mental state or a less serious risk of harm to the victim, and the offense is not an attempt, facilitation, or solicitation to commit the offense charged. See Burns, 6 S.W.3d at 166-67.

-10-

mental state is the same as that of aggravated child abuse, which requires a knowing mental state. See Tenn. Code Ann. §§ 39-13-102(a), 39-15-401(a), 39-15-402(a). The mental states are the same because our Code provides that proof of intentional conduct will also establish that the conduct was knowing. See id. § 39-11-301(a)(2). Thus, the mental state of knowing is established if a person acts intentionally or knowingly. For both aggravated assault and aggravated child abuse, the victim must suffer serious bodily injury. See id. § 39-13-102(a), 39-15-401(a), 39-15-402(a). Thus, the only difference is that for aggravated child abuse, the victim must be a child. See id. Accordingly, we find that intentional or knowing aggravated assault is a lesser included offense under part (a) of the Burns test because all of the statutory elements are included within the statutory elements of aggravated child abuse.

Reckless aggravated assault, however, contains a different statutory element that is not included within the statutory elements of aggravated child abuse because it requires a reckless mental state instead of a knowing mental state. See id. § 39-13-102(a)(2). Part (b) of the Burns test provides that an offense is a lesser included offense if "it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing (1) a different mental state indicating a lesser kind of culpability." Burns, 6 S.W.2d at 466-67. Because reckless is a less culpable mental state than knowing, see Tenn. Code Ann. §§ 39-11-301(a)(2), 39-11-302(b), (c), and because the less culpable mental state is the only element that is not included within the statutory elements of aggravated child abuse, see id. §§ 39-13-102(a)(2), 39-15-401(a), 39-15-402(a), reckless aggravated assault is a lesser included offense of aggravated child abuse.[3]

Similarly, the offense of assault occurs when a person intentionally, knowingly, or recklessly causes bodily injury to another. See id. § 39-13-101(a)(1). The only element that is not included within the statutory elements of aggravated child abuse is that of a reckless mental state. See id. §§ 39-13-101(a)(1), 39-15-401(a), 39-15-402(a). Because reckless is a less culpable mental state, it is a lesser included offense under part (b) of the Burns test. See Burns, 6 S.W.3d at 466-67.[4]

Having found that aggravated assault and assault are lesser included offenses of aggravated child abuse, we must now determine whether the trial court should have instructed the jury on those offenses. The test we must utilize to make this determination is (1) whether any evidence exists that reasonable minds could accept as to the lesser included offense, and (2) whether the evidence is legally sufficient to support a conviction for the lesser included offense. Id. at 469. In examining first the offense of aggravated assault, we must reiterate that the statute makes a distinction between aggravated assault when the conduct is intentional or knowing and when the conduct is merely reckless: Conduct which is intentional or knowing is a Class C felony, while conduct which is reckless is a Class D felony. See Tenn. Code Ann. § 39-13-102(a), (d). We do not believe that there

---

[3]Tennessee Code Annotated § 39-11-301(a)(2) states that, "When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly." Therefore, an equally compelling argument could perhaps be made that reckless aggravated assault is also a lesser included offense of aggravated child abuse under part (a) of the Burns test.

[4]See n. 3, supra.

-11-

is any evidence which reasonable minds could accept as to the lesser offense of aggravated assault based on intentional or knowing conduct. Because the victim's age is the only difference between aggravated assault and aggravated child abuse when the Defendant's conduct is knowing or intentional, the only way the jury could have convicted the Defendant of aggravated assault is if it believed the victim was not a child. Reasonable minds could not have reached that conclusion. Aggravated assault by reckless conduct, however, presents a different situation. Reasonable minds could have determined that the Defendant acted recklessly, but not knowingly or intentionally, when he injured the child. Also, there is sufficient evidence to support a conclusion that the Defendant recklessly caused serious bodily injury to another person. Thus, we conclude that the trial court erred by not instructing the jury on the offense of aggravated assault by reckless conduct, as set forth in Tennessee Code Annotated § 39-13-102(a)(2)(A).

We also conclude that the trial court erred by not instructing the jury on the offense of assault. Assault requires a mental state that is intentional, knowing, or reckless, and it requires bodily injury to the victim. See id. § 39-13-101(a)(1). We have already determined that reasonable minds could have found that the Defendant acted intentionally, knowingly, or recklessly. Whether the victim suffered "serious bodily injury" or just "bodily injury" was an issue hotly contested at trial, and we believe that reasonable minds could have accepted the evidence that the victim suffered only bodily injury. Thus, the trial court should have instructed the jury on the offense of assault.

Notwithstanding, the failure to instruct on a lesser included offense is subject to harmless error analysis. See State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998). Reversal is only required "if the error affirmatively appears to have affected the result of the trial on the merits, or in other words, reversal is required if the error more probably than not affected the judgment to the defendant's prejudice." Id. This standard of appellate review was reaffirmed by our supreme court in State v. Tina Swindle, No. M1998-00362-SC-R11-CD, 2000 WL 1206492, at *4 (Tenn., Nashville, Aug. 25, 2000).[5]

We cannot say that the failure to instruct on aggravated assault and assault more probably than not affected the judgment. For the jury to have convicted the Defendant of aggravated assault, it would have had to have found that the Defendant acted recklessly rather than knowingly. See Tenn. Code Ann. §§ 39-13-402(a)(2), 39-15-402(a). The Defendant testified that he intentionally hit the child by spanking him with a belt and that he caused some of the child's injuries. While the jury might have found that the Defendant acted recklessly rather than knowingly, we cannot say that it is more probable than not that the jury would have found that the Defendant acted recklessly if given the option. Thus, the failure to instruct the jury on the offense of aggravated assault was harmless. Similarly, to convict the Defendant of assault, the jury would have had to have rejected

---

[5]We note that there has been some disagreement among members of this Court concerning the proper standard for determining whether a trial court's error in failing to charge a lesser included offense is harmless or reversible. See State v. Jumbo Kuri, No. M1999-00638-CCA-R3-CD, 2000 WL 680373, at *6-7 Tenn. Crim. App., Nashville, May 25, 2000); State v. Khanh Le, No. W1998-00637-CCA-R3-CD, 2000 WL 284425, at *8-7 (Tenn. Crim. App., Jackson, Mar. 9, 2000); State v. Curtis J. Ely, No. 03C01-9806-CC-00215, 1999 WL 997505, at *8-10 (Tenn. Crim. App. Knoxville, Nov. 4, 1999) (Wade, J., dissenting); perm. app. granted (Tenn. May 22, 2000).

the evidence that the victim suffered serious bodily injury and found instead that he suffered only bodily injury. See id. §§ 39-13-101(a)(1), 39-15-402(a). The jury was instructed on the offenses of aggravated child abuse and child abuse. Child abuse differs from aggravated child abuse in that it requires only injury to the child, rather than serious bodily injury. See id. §§ 39-15-401(a), 39-15-402(a). Because the jury convicted the Defendant of aggravated child abuse rather than child abuse, we can assume that the jury rejected the evidence that the victim suffered only bodily injury rather than serious bodily injury. See Williams, 977 S.W.2d at 106. Thus, we cannot say that the jury more probably than not would have convicted the Defendant of assault, making the failure to instruct the jury on assault also harmless.

## REDACTION OF MEDICAL REPORT

The Defendant argues that the trial court erred by not properly redacting the victim's medical report so as to eliminate a reference to the Defendant as the "chief suspect" in the case of alleged child abuse. He states that while the trial court did order redaction, the redaction was not successful, and the reference could be seen by the jury. He does not, however, cite to any place in the record where we might find this unsuccessful redaction; our review of the medical report included in the record on appeal did not reveal any reference to the Defendant as the chief suspect. Therefore, this issue is waived because the Defendant failed to make appropriate references to the record. Tenn. Ct. Crim. App. R. 10(b); Killebrew, 760 S.W.2d at 231; see also Tenn. R. App. P. 27(a)(7), (g). In addition, we note that any error in redacting the medical records would be harmless. The jury was informed through the testimony of the State's witnesses that the Defendant was the chief suspect in the case.

## REDACTION OF STATEMENT

Finally, the Defendant asserts that the trial court erred by not redacting his statement so as to eliminate the detective's use of the word "extremely" and by permitting unintelligible portions of the statement to be heard by the jury. As previously stated, the admissibility of evidence is a matter within the sound discretion of the trial court, and this Court will not disturb the trial court's ruling absent a clear showing of an abuse of that discretion. See Cauthern, 967 S.W.2d at 743; Banks, 564 S.W.2d at 949. We find no abuse of discretion in refusing to redact the Defendant's statement.

When questioning the Defendant, Detective Carpenter asked the Defendant, "Would you describe the whippings you gave him as very excessive," to which the Defendant replied, "maybe once." Detective Carpenter then asked, "This one time that you would describe it as extremely excessive, when was that?," and the Defendant replied, "It's.. probably just this last time." The Defendant asserts that by allowing the word "extremely" to remain in the statement, the trial court permitted the statement to suggest that the Defendant spanked Jacob hard enough to inflict "extreme physical pain." We conclude that the extent of force used during the spanking was very relevant to the jury's determination of whether the Defendant caused Jacob extreme physical pain. Therefore, we cannot find that the admission of the word "extremely" was an abuse of discretion.

The Defendant also asserts that the trial court erred by allowing the jury to hear unintelligible portions of the statement because those portions occur in places where the Defendant admitted that the child was injured. He asserts that it was prejudicial because the portions improperly suggest to the jury that the Defendant committed the crime. Specifically, Detective Carpenter asked the Defendant, "The rest of the bruises from his legs and on his back,.. on these pictures I've shown you, do you think most of those resulted from your whippings?," and the Defendant replied, "Yeah, probably. I.. I don't know about all the ones on his back. Cause I don't know.. UNINTELLIGIBLE." Later, Detective Carpenter said, "But, you do realize that.. that Mic.. that Jacob has suffered abuse and that a lot of that abuse came at.. at your hand while you were whipping him?" The Defendant replied, "UNINTELLIGIBLE, Yeah."

We do not believe that it was an abuse of discretion to allow the jury to hear the Defendant's statement, which included unintelligible portions. The statement was very relevant to the issue of the Defendant's guilt. Moreover, the detective who took the statement was available for cross-examination as to any parts of the recorded statement which were unintelligible. Any prejudicial effect was outweighed by the probative value of the statement.

## CONCLUSION

We hold that the trial court erred by failing to instruct the jury on the offenses of aggravated assault by reckless conduct and assault, but that such failure was harmless. All other issues raised by the Defendant lack merit. Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

-14-