IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 13, 2001

## STATE OF TENNESSEE v. CHARLES GOODE

**Appeal from the Criminal Court for Shelby County**
**No. 99-05065    James C. Beasley, Jr., Criminal Court Judge**

---

**No. W2000-02267-CCA-R3-CO - Filed September 10, 2001**

---

Charles Goode was convicted by a jury of aggravated rape, and was sentenced to twenty-five (25) years in the Department of Correction. He challenges the sufficiency of the evidence and the actions of the judge in sentencing him to serve the maximum sentence. We affirm the judgment of the trial court.

**Appeal as of Right; Judgment of the Trial Court Affirmed**

CORNELIA A. CLARK, SP. J., delivered the opinion of the court, in which JOE G. RILEY and NORMA MCGEE OGLE, JJ., joined.

A. C. Wharton, District Public Defender, Tony N. Brayton, Assistant District Public Defender, R. Trent Hall, Assistant District Public Defender.

Paul G. Summers, Attorney General, Mark A. Fulks, Assistant Attorney General, William L. Gibbons, District Attorney General, Patience Branham, Assistant District Attorney General.

**OPINION**

In March 1999 Elizabeth Reed, the victim, was a resident of Mid-South Christian Nursing Home in Shelby County, Tennessee. She was seventy (70) years of age and had been crippled since birth due to cerebral palsy. Although she was able to feed and partially dress herself, she was not able to move on her own. She also could not participate in general activities, and was physically helpless. She had never lived alone, residing at home until her mother's death in 1980, and at Mid-South since that time.

The defendant was a charge nurse at Mid-South, and was one of several persons who regularly provided care to the victim. The victim testified that on the night of March 30, 1999, as she sat watching television, the defendant entered her room and announced that it was time for bed. He then lifted the victim, placed her in her bed, stripped her of her clothes, climbed on top of her, and digitally penetrated her vagina, causing her to bleed profusely. During these events he also

kissed the victim on the mouth and told her he loved her. The victim testified that she did not consent to any of the defendant's actions.

At the conclusion of these events the defendant observed that the victim was bleeding, but told her that she would be all right. He began to change her bed linens, but was interrupted when another caregiver entered the room. He left without treating her injuries.

Roosevelt Nelson, a caregiver at the nursing home, testified that on March 30, 1999, he was making regular rounds. When he first entered the victim's room, the defendant, a nurse, was also in the room. He was stripping linens from the bed, a task he did not usually perform. Nelson offered to complete the task. The defendant accepted the offer and left the room. He offered no explanation about why the patient was bleeding.

Nelson stated that when he entered the victim's bedroom he was "kind of shocked", apparently because of the blood he observed. Nelson took the victim out of bed, placed her in a wheelchair, and took her into the bathroom. The victim seemed unwilling to have Nelson touch her. Nelson observed that the victim was bleeding, and he was unable to stop the flow of blood even after he cleaned her. He placed a pad on her to contain the bleeding.

When Nelson returned the victim to the bed and continued to change the bed linens, he noticed that the fitted sheet normally placed over the mattress had been replaced by a flat sheet. The blue pad normally placed across the bed on top of the draw sheets was located under the flat sheet covering the mattress, and was soiled with blood.

Nelson then found the defendant, advised him that the victim was in pain, and asked him to administer pain medication. The defendant responded that he already had given her medication. The defendant did not provide any information about the victim's injuries.

Later the same evening the victim was hospitalized because of her injuries. She continued to bleed from her vaginal area.

Marie Fizer, the victim's older sister, testified that she was called about midnight and told of her sister's hospital admission. Because she did not drive at night, she was unable to get to the hospital until the next morning. When she did arrive she found that the victim was very upset. The victim remained in the hospital for four days, and then was moved to a different nursing home because she was afraid to return to MidSouth.

Sally DiScenza, a forensic sexual assault nurse, was called to examine the victim one day after the assault. She testified that she observed an acute, recent hematoma around the vaginal area, and bruising on the upper inner thighs. The victim also had an acute laceration in the inner labia and vulva, caused by a sharp object. The victim stated that the defendant had digitally penetrated her. As a post-menopausal woman the victim was more prone to injury due to a lack of estrogen. Ms. DiScenza testified that the victim's injuries were definitely caused by trauma, and were consistent

with sexual penetration. She also noted that although the victim was physically limited, she was alert, oriented, cooperative, and able to describe what had happened to her.

Ruth Boring, former charge nurse at the Mid-South Christian Nursing Home, testified for the defense. She stated that on approximately fifteen occasions over two or three years she had observed the victim engaged in sexual masturbation using the bristle end of a hairbrush. She acknowledged that she did not record or report these incidents to anyone at the time she observed them. She stated that she wished to preserve the victim's privacy. Boring also admitted that the victim had never exhibited any visible problems with her vaginal area. She acknowledged that she was fired from her position at Mid-South before this incident occurred.

The defendant did not testify at the trial or sentencing hearing. He was convicted of aggravated rape involving bodily injury to the victim.

## Sufficiency of the Evidence

The defendant first challenges the sufficiency of the evidence. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in the testimony in favor of the state. *See State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994).

Aggravated rape as charged in this case is the unlawful sexual penetration of a victim by the defendant where the defendant causes bodily injury to the victim. Tenn. Code Ann. §39-13-502(a)(2). Bodily injury is defined to include a cut, abrasion, or bruise. Tenn. Code Ann. §39-11-106(a)(2). The defendant argues that the evidence of aggravated rape is insufficient in this case because there was no independent eyewitness to the unlawful sexual penetration. The defendant further argues that the victim's own eyewitness testimony is not sufficient because she was continuously under the influence of unknown medications. Defendant also emphasizes the testimony of a forensic nurse that the lacerations to the victim's vaginal area were likely caused by some sort of sharp object about which the defendant claims there was no specific testimony. He acknowledges, however, that there is at least some evidence to support the verdict of the jury.

In short, the defendant asks this court to reevaluate the weight and value of the testimony presented at trial. It is not the prerogative of this court to revisit questions of witness credibility on appeal. The law is well established that the testimony of a victim identifying the perpetrator is sufficient in and of itself to support a conviction. *State v. Strickland*, 885 S.W.2d 85, 87-88 (Tenn.

Crim. App. 1993). The victim's testimony about the unlawful penetration was clear and unequivocal. She immediately experienced abrasions and bleeding. The testimony of the forensic sexual assault nurse about the victim's physical condition confirms that of the victim. This issue is without merit.

### Sentencing

Defendant next contends that the trial court erred in sentencing him to the maximum sentence of twenty-five years because the judge misapplied certain enhancement factors. When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401 (d). This presumption is, however, "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statements that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§40-35-102, -103, and -210; See *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify this sentence even if we would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Aggravated rape is a Class A felony. *See* Tenn. Code Ann. §39-13-502(b). The sentence range for a Range I offender convicted of a Class A felony is fifteen to twenty-five years. Tenn. Code Ann. §40-35-112(a)(1). The presumptive sentence is the mid-point of the range if there are no enhancement or mitigating factors. Tenn. Code Ann. §40-35-210(c). If the court finds that enhancement and mitigating factors are applicable, the court must begin with the mid-point and enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence as appropriate for the mitigating factors. Tenn. Code Ann. §40-35-210(e); *State v. Spratt*, 31 S.W.3d 587 (Tenn. Crim. App. 2000). The weight afforded an enhancement or mitigating factor is left to the discretion of the trial judge so long as the judge complies with the purposes and principles of the 1989 Sentencing Act and the judge's findings are supported by the record. *See State v. Turner*, 30 S.W.3d 355, 361 (Tenn. Crim. App. 2000).

The trial court found the existence of one mitigating factor - that the defendant was sixty-two years old and had no prior criminal record. However, the trial judge gave little weight to this factor.

Under Tenn. Code Ann. §40-35-114, the trial court found the existence of four enhancement factors:

> (4)   the victim was particularly vulnerable because of age or physical or mental disability;
> (7)   the offense was committed to gratify the defendant's desire for pleasure or excitement;
> (15)   the defendant abused a position of public or private trust; and
> (16)   the crime was committed under circumstances under which the potential for bodily injury to the victim was great.

The defendant does not contest the application of factor (15) - that the defendant abused a position of public or private trust. We agree that this factor applies, since the defendant was a nursing home caregiver to the near-helpless victim.

The defendant also does not contest the application of enhancement factor (4) - that the victim was particularly vulnerable because of age or physical or mental disability. We conclude that this factor, too, clearly applies in a case where the victim was seventy years old and rendered helpless all her life by cerebral palsy.

The defendant *does* contest the application of factor (7), that the offense was committed to gratify the defendant's desire for pleasure or excitement. In *State v. Adams*, 864 S.W.2d 31, 34-35 (Tenn. 1993), the Supreme Court held that while neither pleasure nor excitement are essential elements of rape, factor (7) may be used to enhance a sentence for rape only if independent evidence exists of a sexual motivation. The state has the burden of proving that motivation. *Id.*

In the instant case the trial court relied upon the victim's testimony that during the course of the rape the defendant got on top of her, kissed her and told her that he loved her. *See State v. Williams*, 920 S.W.2d 247, 260 (Tenn. Crim. App. 1995); *Manning v. State*, 883 S.W.2d 635, 639 (Tenn. Crim. App. 1994). While this is a close case, we believe these independent facts are sufficient to justify the trial court's application of this factor.

The defendant also contests the application of enhancement factor (16), that the crime was committed under circumstances under which the potential for bodily injury to the victim was great. In *State v. Smith*, 891 S.W.2d 922, 930 (Tenn. Crim. App. 1994), this court held that a trial court should not apply this factor to enhance a sentence for aggravated rape by bodily injury in the absence of extraordinary circumstances. *See also State v. Williams*, 920 S.W.2d 247, 260 (Tenn. Crim. App. 1995). As noted in *Smith*, the legislature has already recognized the potential for bodily injury in cases of aggravated rape by enhancing the offense and the sentence to an aggravated status. *Smith*, 891 S.W.2d at 930. Although we believe that the circumstances existing in this case might be termed "extraordinary", it is unnecessary to determine the application of enhancement factor (16) in order to affirm the trial court's imposition of the maximum sentence.

In setting the defendant's sentence at twenty-five years, the trial court gave great emphasis to the peculiar vulnerability of the victim and the abuse of her trust. These factors alone are sufficient to justify imposition of the maximum sentence. The trial court also properly found the existence of one additional enhancement factor, and gave greater weight to all of them than to the mitigating factor of the defendant's lack of prior criminal activity. Our *de novo* review convinces us that the imposition of the maximum sentence was appropriate.

For the reasons stated above, the judgment of the trial court is affirmed in all respects.

_____
CORNELIA A. CLARK, SPECIAL JUDGE